Thank you. The next case for argument this morning is United States v. Charles Fears, 22-1934. Good morning, Mr. Van Zandt. Good morning, and may it please the Court. I thought this morning I'd start with the Kilcrease problem, unless the Court would like to talk about one of the other issues in the case. So in United States v. Kilcrease, as the government points out, this Court held in 2012 that prosecutorial discretion inherent in evaluating and deciding whether and how to reward a defendant's cooperation does not by itself render a plea agreement invalid. So essentially what this Court said was if there is a discretionary provision, that is sufficient consideration for a plea agreement. Now that's directly opposed to the law of contracts in almost any other agreement. So I admit I was very surprised when I read the response from the government because I thought I'd made a horrible mistake and completely missed Kilcrease. Once I dug into it, though, what I found was Kilcrease is not supported by any of the cases that it cites for this proposition. Kilcrease ends up citing seven different cases to support this idea that a discretionary provision is sufficient, and not one of them actually deals with the question of consideration. For example, in Wade, which was the primary one that Kilcrease relied on, there wasn't a plea agreement at all. The same was true for Billings. Now what these cases did address was whether or not the trial judge had the authority or the jurisdiction to review the sufficiency of the defendant's cooperation in that situation where the government decides not to file a Rule 35b motion. That's not what we have here at all, and it's certainly not what Kilcrease said. So while I acknowledge that on its face Kilcrease appears to be a very significant issue for the defense in this case, on further examination, that is not supported at all by the law. And I have to say that Kilcrease was wrongly reasoned on that point. Your argument, as I understand it, is that the appellate waiver is void because there isn't sufficient consideration. Is that correct? To an extent, Your Honor. It's really the entire plea agreement. Okay, that's what I wanted to clarify because under our law, if there isn't sufficient consideration, we look at it in terms of the plea agreement in its entirety, not a particular provision. Precisely, Your Honor. So do you understand or does your client understand that if we were to agree with you, the entire plea agreement would be void, this would be sent back to the trial court to start over? I had a very long discussion with him on that very point, Your Honor. And if he's convicted again, theoretically, his sentence could be significantly higher and the court could take into consideration things such as letters he's been sending to the court that are on the docket in the district court. That's absolutely correct, Your Honor. Okay. I agree. My personal concern is that could happen. But in this situation, it's not my call. This is what he has decided to do and there is a valid basis to attack this plea agreement, in my opinion. You didn't raise this argument below. I know you're appointed, so when I say you, I don't mean you in particular. But the defendant did not raise this consideration argument before. So do you agree we would review this for plain error? That's an interesting question, Your Honor. I don't think I've thought about that very deeply. I would think that this would be a plain error issue, but I think under any real evaluation of this, this is a plain error. It certainly affects his constitutional rights. Now, the government didn't raise that, so they may have waived it. Certainly. But that's an interesting question. I have to admit I haven't thought about it. Now, the second issue, and what I thought was the government's actual strongest point, has to do with the superseding indictment. And that was the one that originally caused me the most concern in this case. You'll note that there originally was a charge under B-1, which was the sex trafficking portion of the statute that Mr. Pierce was originally charged with. In the superseding indictment, he was charged under B-2. And the difference between the two is that there's a mandatory minimum 10 years under one and 15 under the other. So the question is, does the- You've led to the information? I'm sorry, yes, Your Honor. Superseding information. The question is, does the change in the mandatory minimum actually have any difference in this case? Now, on the surface, it seems to. But then when we consider the guidelines that Mr. Pierce was looking at, which were life, there is no reasonable way to say that a change of five years in the bottom would actually affect what the ultimate sentence was. Why not? When courts go below guidelines all the time. That's true, Your Honor. And I will say, I have had this situation in other cases. But the difference is where the guidelines are. So let's say there's a situation where I've got a guy whose guidelines are right around 15 years. And the mandatory minimum is 15. I would definitely be interested in seeing if I can get a 10-year mandatory minimum going below guidelines. That's not true in this case because Mr. Pierce's guidelines were sky high. They were not just life. I think he came out of 48, which is well above, literally off the charts, as Judge Kendall said. That's probably the highest I've ever seen. So any change in what he pled guilty to didn't change the guidelines. Are there different implications at the Bureau of Prisons if your mandatory minimum is a 10-year versus a 15-year, if you know? I don't believe so, Your Honor, but don't quote me on that. I certainly haven't come across it. Now, this was the problem the Fifth Circuit had in Pierre. They considered a very similar issue, and they addressed basically this point. And what they ended up deciding was it really doesn't matter what the actual mandatory minimums, maxims, et cetera, et cetera are. It's the guidelines that matter because guidelines drive sentencing. And that's exactly what happened here. The superseding information, while slightly different, completely did not affect how Mr. Pierce was sentenced at all. All of the other victims came in as relevant conduct, which they would have anyway. The sex trafficking statute was functionally the same, just a different subprision. So we're talking about the exact same statutory maximum of life. So the question becomes, what did Mr. Pierce get by waiving his right to appeal? I would like to save some time for rebuttal. If there's no other questions, I will yield to the government at this time. Thank you. Mr. Pullerton. Good morning. May it please the Court. We're asking the Court to enforce the appellate waiver and enforce Mr. Pierce's plea agreement. Mr. Pierce, in exchange for his guilty plea and his appellate waiver and forgoing a trial in this case, received from the government valuable consideration. The last thing we were talking about, you were talking about with my opponent, is the reduction in the severity and number of the charges that Mr. Pierce faced. Now, that was very significant. He had been charged in the— Mr. Pullerton, before you go too far down, do you agree that the appropriate inquiry is whether or not the plea agreement as a whole is valid based on this consideration, rather than just looking at it as consideration for the appellate waiver itself? I agree. I agree. And the argument, in terms of our standard of review, the argument that is being presented on behalf of Mr. Pierce before this Court was not raised before the district court. That's correct. But you have not raised a forfeiture issue, so would you agree you have waived that? I agree we did not assert plain error review. The reason is that, from what I can tell, the validity of appellate waivers in plea agreements is reviewed de novo. And I can understand that because in the district court, there's no cause to review the enforceability— But again, we're not reviewing the appellate waiver. We're reviewing the entirety of the— Right. So they're both bound up one with the other, and reviewing an appellate waiver in some ways causes the review of the entire plea agreement. Under either standard, this is an enforceable plea and appellate waiver, whether it's de novo or reviewed for plain error. And that's because there was an exchange of valuable consideration for Mr. Pierce's plea agreement, his guilty plea. The first and most important is this reduction in the number and severity of the charges that he faced. He went from facing five counts in the superseding indictment, with a mandatory minimum of 15 years, to pleading guilty to two counts that had a mandatory minimum of 10 years. Now, agreed, granted, his guidelines were well above 15 years, or even farther above 10 years. But Mr. Pierce and his two lawyers, who assisted him in negotiating this plea agreement, evidently thought it was worthwhile. Because not only did he enter the plea agreement, but he argued it sentencing for a mandatory minimum sentence of 10 years. In fact, he had argued it sentencing for something lower than 120 months or 10 years, which was in effect an argument for the 10-year mandatory minimum. Now, was he likely to get that? Was it a good argument? The main argument is that it's illusory. He wasn't given anything in exchange for the plea agreement. I'm sorry, Your Honor? So, reliance on the peer case. Spending a lot of time on the peer case. It's similar in here, Mr. Pierce gained nothing from entering into this plea. Did the government ever file a substantial assistance motion? We did not. I wasn't working on the case in the district court, but I'll note that Mr. Pierce, by the time he was sentenced, had attempted to withdraw from the plea, had denied his guilt in the offense, had blamed his co-defendant and the victims of his offense for the situation that he was in. He had attempted to get a substantial assistance motion from the government, and in fact, by the time of sentencing, had ruined his chances for getting an agreement to the acceptance of responsibility credit, which was another one of the valuable considerations granted by the government in the plea. Namely, the government agrees that you appear to be taking responsibility for your conduct, exhibiting remorse, and if this continues by the time of sentencing, we agree that you would get a substantial acceptance of responsibility, reduction in your guidelines, and we will move for the third point off your guidelines. Now, would that change his actual guidelines range? No. His guidelines range was, as noted, off the charts. But it's valuable for a defendant to have, and Mr. Pierce evidently thought it was valuable because he entered into the plea agreement, it's valuable for the government at sentencing to agree that a defendant has accepted responsibility, that indeed he is remorseful, that his conduct, his acceptance of responsibility has not only continued from the time of his plea, but also to the time of sentencing. So the government had agreed to this. Mr. Pierce, as I said, ruined his chances of getting that acceptance reduction, but that was not because the government didn't follow through on its agreement. The government adhered to all the terms of its plea, and Mr. Pierce should be bound by it as well, in terms of upholding the validity of the plea, and with that, upholding the validity of the appellate waiver. Unless there are any other questions, we ask that the court affirm Mr. Pierce's conviction and sentence. Thank you, Mr. Fullerton. Mr. Van Zandt. Thank you, Emma. Just a few brief points, then I'm happy to answer any questions the court has. First, something that struck me in the government's argument here was that Mr. Pierce thought the acceptance of responsibility credit was valuable. That's kind of the point here, is that this was an illusory promise that looks valuable on its surface, but when you actually apply it, we're talking about someone whose guidelines are at a 48. So what if the government moves for a three-point reduction because we're at 45, which is still about 43? It doesn't matter. Now, there's certainly some arguments to be made that if the… Doesn't that contribute under 3553A as well, in the history and characteristics of the defendant? That if the sentencing court is informed that there's no objection to the acceptance of responsibility, that conveys something about the defendant's behavior and character in connection with the offense. I actually agree with that, Your Honor. That was my next point, and I think that that's worth considering. But note that we're talking about 3553. At that point, we're not talking about the guidelines anymore, and we're certainly not talking about the plea agreement. Does the consideration, though, have to be limited to the guidelines? Probably no, Your Honor. But thinking about this, the government doesn't have to make a motion to get acceptance of responsibility. They do have to make a motion to get the third-point credit, but that certainly doesn't have anything to do with 3553A. But don't you think it helps to have the government's support for the acceptance of responsibility? Hit or miss, Your Honor, on this one, and that's just practice. But I think that the point here is that if we're talking about sentencing, it doesn't matter whether or not the government gives the credit or not. It has to do with the defendant themselves, right? So if Mr. Fears accepted responsibility and the government decided for whatever reason they didn't want to make this motion for acceptance of responsibility, that's not necessarily going to affect the trial court's judgment. So when Mr. Fears has promised something, that he thinks he's going to get three points off, he's going to get the government behind him, that's an illusion. And that's exactly what we're talking about here. It's the same thing as the 35B issue where the government can decide what it wants and it's completely unreviewable. The trial court can only step in if there's some evidence that it was in bad faith or for some sort of retaliatory reason. So where does that leave Mr. Fears? He's in the exact same place he would have been had he gone to trial, had he done a plea declaration to the original indictment, anything like that. There's really not much of a change for him, and that's the problem. I see I've got about 30 seconds left and it's close to lunch, but I'll be happy to answer any other questions the court has. Thank you. No questions. Thank you, Mr. Van Sant. Thanks to both counsel and Mr. Van Sant. You were appointed for this case. Thank you very much for your service and your high quality of representation. Thank you.